**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:07-mj-00045-PAL-PAL |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| VAN ROBSON, ) | (M/Suppress - #8) |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant Van Robson's Motion to Suppress Evidence for Fourth Amendment Violation (#8). The Court has considered the motion, the Government's Opposition (#10), defendant's Reply (#11), the government's Sur-Reply (#12) which corrects an error identifying the name of the ranger involved in this incident, and evidence adduced at an evidentiary hearing conducted September 5, 2007. The court denied the motion at the conclusion of the evidentiary hearing indicating a written order and decision would follow.

**BACKGROUND**

The defendant, Van Robson ("Robson"), is charged in a criminal complaint (#1) filed January 23, 2007 with violating 36 C.F.R. §§ 4.23(a)(1) and (2) for operating and being in actual physical control of a motor vehicle under the influence of alcohol (Count One) and with a BAC of 0.08 grams or higher (Count Two). The complaint arises out of a June 17, 2006 arrest of Robson in the Lake Mead National Recreation Area ("LMNRA") by Ranger Chris Raynolds ("Raynolds").

Frank and Penny Vallone testified at the evidentiary hearing that at approximately noon on June 17, 2006, Mrs. Vallone was driving in the LMNRA, with Mr. Vallone in the passenger seat, when they saw Robson driving a tan Ford Ranger with Utah plates. The Vallones saw Robson hit a curb while leaving the Echo Bay Campground area. Robson swerved into their travel lane, causing the

1    Vallones to pull onto the shoulder of the road to avoid a collision.  The Vallones followed Robson for
2    roughly two minutes until he parked in a designated parking space, with a curb in front of the space, in
3    the Echo Bay Motel parking lot.  Mr. Vallone found Raynolds on duty in the parking lot, explained
4    what they had witnessed, and pointed out the parked Ford Ranger.  Raynolds drove his SUV over to
5    Robson's vehicle and parked behind Robson's vehicle, partially blocking it.  Only a few minutes had
6    elapsed from the time the Vallones observed Robson's erratic driving until Raynolds contacted Robson.
7        When Raynolds approached Robson's vehicle, he noticed two empty cans of Tecate beer in the
8    truck bed and an oleander branch hanging off the driver's side.  Raynolds explained to Robson that he
9    had received a report of erratic driving.  Within the first 15 seconds of speaking to Robson, Raynolds
10   smelled the odor of alcohol, and noticed that Robson's eyes were bloodshot, his speech was slurred, and
11   his clothes were disheveled.  Raynolds asked Robson to step out of the vehicle to perform field sobriety
12   tests.  Robson complied, but failed the field sobriety tests.  Raynolds then administered a field Alco-
13   sensor test revealing a Breath Alcohol Level ("BAC") of 0.223.  Robson was arrested and transported to
14   the Echo Bay Ranger Station where an Intoxilyzer 5000 breath tests were conducted, measuring BAC
15   levels of 0.206 and 0.196.
16       In the current motion, Robson claims his Fourth Amendment right to be free from unreasonable
17   seizures was violated and seeks to suppress "all evidence seized subsequent to the illegal stop." (Mot. at
18   2:7-9).  Robson argues that the witness' uncorroborated report, alone, did not establish probable cause
19   of a traffic infraction or reasonable suspicion of a DUI to justify a stop.  At the evidentiary hearing,
20   Robson argued that he was seized as soon as the ranger parked behind his parked vehicle because he
21   was prevented from leaving.  In response, the government argues that the eye witness report gave the
22   ranger reasonable suspicion to approach and question Robson.  The government also argued at the
23   hearing that the ranger did not seize Robson by parking behind him.  Robson replies that the ranger had
24   no reasonable suspicion because the ranger did not corroborate the Vallones' report or witness Robson
25   breaking any traffic rules or driving erratically.

26                                    **DISCUSSION**

27       The Fourth Amendment secures "the right of the people to be secure in their persons, houses,
28   papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth

1  Amendment protects reasonable and legitimate expectations of privacy.  <u>Katz v. United States</u>, 389 U.S.
2  347 (1967).  The Fourth Amendment protects "people not places."  <u>Id.</u>  Evidence obtained in violation
3  of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the
4  poisonous tree."  <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

      **A.**       **The Initial Encounter**

6        Whether a person has been seized for purposes of the Fourth Amendment is a mixed question of
7  law and fact.  <u>United States v. Kim</u>, 25 F.3d 1426, 1430 (9th Cir. 1994).  Not all contacts between law
8  enforcement and citizens involve seizures for purposes of the Fourth Amendment.  For Fourth
9  Amendment purposes, the seizure of a person occurs when a law enforcement officer in some way
10 restricts the liberty of a citizen, either by physical force or show of authority.  <u>Florida v. Bostick</u>, 501
11 U.S. 429, 434 (1991).  A citizen's liberty is restrained if, "taking into account all of the circumstances
12 surrounding the encounter, the police conduct would 'have communicated to a reasonable person that
13 he was not at liberty to ignore the police presence and go about his business.'"  <u>Bostick</u>, 501 U.S. at
14 437, <u>quoting</u>, <u>California v. Hodari D.</u>, 499 U.S. 621, 628 (1991).  The United States Supreme Court
15 reaffirmed the holdings in <u>Bostick</u> and <u>Hodari D.</u>, reiterating that to determine whether an individual
16 has been seized for Fourth Amendment purposes, the court must consider the totality of all the
17 circumstances surrounding the encounter.  <u>United States v. Drayton</u>, 536 U.S. 194 (2002).  The
18 reasonable person test is an objective one and "presupposes an <u>innocent</u> person."  <u>Id.</u> at 202, <u>quoting</u>,
19 <u>Bostick</u> at 437-38 (emphasis in original).

20       The Supreme Court has long held that law enforcement officers may approach a citizen at any
21 time, request identification and other information, and even request permission to search so long as a
22 reasonable innocent person in the citizen's position recognizes that he or she is free to leave or
23 terminate the encounter.  <u>Bostick</u>, 501 U.S. at 437.  The Supreme Court has also repeatedly held that
24 "mere police questioning does not constitute a seizure."  <u>Id.</u>  Or, as the Supreme Court stated in <u>United
25 States v. Drayton</u>, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of
26 unreasonable seizures merely by approaching individuals on the street or in other public places and
27 putting questions to them if they are willing to listen."  536 U.S. 199, 200 (2002), <u>citing</u> <u>Florida v.
28 Royer</u>, 460 U.S. 491 at 497 (1983), and <u>Florida v. Rodriguez</u>, 469 U.S. 1 at 5-6 (1994).  The Supreme

1   Court reiterated in Drayton, that "[e]ven when law enforcement officers have no basis for suspecting a
2   particular individual, they may pose questions, ask for identification, and request consent to search
3   luggage – provided they do not induce cooperation by coercive means . . .   If a reasonable person
4   would feel free to terminate the encounter, then he or she has not been seized." 536 U.S. at 201
5   (internal citation omitted).  A citizen's encounter with a police officer "will not trigger Fourth
6   Amendment scrutiny unless it loses its consensual nature."  Id.

7   During oral argument at the evidentiary hearing, counsel for Robson argued Robson was seized
8   without reasonable suspicion from the moment Raynolds approached his parked vehicle and parked
9   behind him.  Because Raynolds partially blocked Robson's Ford Ranger, Robson argues he was not free
10  to terminate the encounter and was detained without probable cause or reasonable suspicion.  However,
11  the court finds Robson was not seized for purposes of the Fourth Amendment where, as here, Raynolds
12  merely approached Robson in an already parked vehicle.  "Law enforcement officers do not implicate
13  much less 'violate the Fourth Amendment by merely approaching an individual on the street . . . [or] by
14  asking him if he is willing to answer some questions.'"  Kim, 25 F.3d at 1430, quoting, Florida v. Royer,
15  460 U.S. 491, 497 (1983).  "This is true whether an officer approaches a person who is on foot or a
16  person who is in a car parked in a public place."  United States v. Washington, 490 F.3d 765, 770 (9th
17  Cir. 2007), citing Kim at 1430.

18  In Kim, the Ninth Circuit recognized that a number of other Circuit Courts of Appeal "have
19  consistently held that an officer's approach of a car parked in a public place does not constitute an
20  investigatory stop or higher echelon Fourth Amendment seizure."  Id. at n.1, citing United States v.
21  Encarnacion-Galvez, 964 F.2d 402, 410 (5th Cir. 1992), **cert. denied**, 506 U.S. 945; United States v.
22  Castellanos, 731 F.2d 979, 983-84 (D.C. Cir. 1984); United States v. Pajari, 715 F.2d 1378, 1381-83
23  (8th Cir. 1983); and Lafave, 3 Search and Seizure § 9.2(h), 408-409 (2nd Ed. 1987) (concluding no
24  seizure occurs if an officer merely walks up to a person standing or sitting in a public place or seated in
25  a vehicle located in a public place and puts questions to him.)

26  The court finds that the encounter between Ranger Raynolds and Robson was not converted into
27  an investigatory detention because Raynolds' SUV partially blocked Robson's vehicle.  In Kim, the
28  Ninth Circuit recognized that the fact that the officer "partially blocked Kim's egress with his

1  automobile informs but does not alter" the court's analysis of whether a person is stopped in the
2  constitutional sense. Id. at 1431.  There is nothing in the record to support a finding that Raynolds did
3  anything to impede Robson from leaving in his vehicle or on foot during the initial encounter, or that
4  Robson tried to terminate the encounter.  The Ninth Circuit held in Kim that an officer who parked his
5  unmarked car partially blocking the egress of Kim's vehicle did not seize Kim for purposes of the
6  Fourth Amendment. Id.  The Ninth Circuit elaborated:

> Even if Agent Aiu had more completely blocked the departure of Kim's automobile, Kim enjoyed greater latitude during his initial conversations with Agent Aiu to depart, even if on foot, than that enjoyed by the more closely hemmed-in suspect whom, approached from two sides with his back against a pillar inside an airport terminal, we deemed not to have been stopped in $25,000 U.S. Currency.

Id. at 1431 n. 2 (citations omitted).  Here, Raynolds approached Robson who was seated in a parked vehicle in a public place.  Since there is nothing in the record to suggest that Raynolds used physical force or show of authority to restrict Robson's liberty, Robson was objectively free to leave.  The initial encounter between the ranger and Robson was thus not a seizure for purposes of the Fourth Amendment.

**B.    Investigatory Detention**

The uncontroverted testimony in the record is that within 15 seconds of approaching Robson's vehicle and speaking with him, Raynolds observed two Tecate beer cans in the bed of Robson's truck, smelled an odor of alcohol about Robson, and observed that Robson's eyes were bloodshot, his speech was slurred, and his clothes were disheveled.  Based on these observations, and the Vallones' report of Robson's driving behavior minutes earlier, Reynolds asked Robson to step out of the car to perform field sobriety tests.  During the evidentiary hearing, neither side explored whether Raynolds requested or commanded Robson to get out of the car and perform field sobriety tests.  The government has not argued Robson voluntarily complied with Raynolds' requests, and Robson rests his suppression arguments on the position he was unlawfully seized from the moment Raynolds parked his SUV behind Robson and approached on foot.

The court finds that Robson was seized when Raynolds asked him to get out of the car to perform field sobriety tests.  From this point, a reasonable person in Robson's position would not have

felt free to ignore Ranger Raynolds' presence and go about his business. Robson was, therefore, seized in a *Terry* stop or investigatory detention which must be supported by reasonable suspicion that criminal activity may be afoot. United States v. Arvizu, 534 U.S. 266, 273 (2002). In assessing whether an officer has reasonable suspicion to conduct an investigatory detention, reviewing courts look at the "totality of the circumstances" of each case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. Id. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981). A reviewing court's determination of reasonable suspicion is a process that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well allude an untrained person.'" Arvizu, 534 U.S. at 273, citing Cortez, 449 U.S. at 418. Reasonable suspicion is not a matter of hard certainties, but of probabilities. Cortez at 417-18. However, reasonable suspicion requires more than an officer's "hunch" even if the hunch later turns out to be a good one. Terry v. Ohio, 392 U.S. 1 at 27. The reasonable suspicion standard is less than a preponderance of the evidence. United States v. Sokolow, 491 U.S. 1, 7 (1989).

      The Ninth Circuit defines "reasonable suspicion" as, "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." Rojas-Millan, 234 F.3d at 468-69, quoting, United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). A police officer "is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" Lopez-Soto, 205 F.3d at 1105, quoting, United States v. Michael R., 90 F.3d 340, 346 (9th Cir. 1996). If an officer does not have reasonable suspicion, and the traffic stop therefore violates the Fourth Amendment, any evidence obtained as a result of the stop must be suppressed as fruit of the poisonous tree. United States v. Thomas, 211 F.3d 1186, 1192 (9th Cir. 2000), citing, Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

///

1. **The Vallones' Report**

The court has found that Robson was not seized for purposes of the Fourth Amendment when Ranger Raynolds parked his SUV and approached Robson on foot. However, assuming *arguendo* that the initial encounter between Ranger Raynolds and Robson was a seizure, the court finds that under the totality of the circumstances presented here, Ranger Raynolds had reasonable suspicion that Robson had committed a traffic infraction.

Citing United States v. Fernandez-Castillo, 324 F.3d 1114 (9th Cir. 2003), Robson argues the Vallones' eye witness report of erratic driving did not create reasonable suspicion to detain him in an investigatory detention of a traffic violation. Robson argues that the Vallones' report of erratic driving which was not corroborated by Park law enforcement before the stop, was insufficient in and of itself to support Robson's investigatory detention for a traffic violation, or DUI. The government responds that the Vallones' report was "self-corroborating," citing United States v. Elliott, 893 F.2d 220 (9th Cir. 1990), and that no further corroboration was required. Robson replies that Elliott is distinguishable and that the Fourth Amendment "requires more than an eye witness account of a possible criminal act." (Reply, 2:24.) Robson notes that in Fernandez-Castillo, the court held that a report of erratic driving by employees of the Montana Department of Transportation ("MDOT"), coupled with a highway patrol officer's corroborating observations, gave the officer reasonable suspicion for an investigatory stop. Id. at 1117.

Robson claims that there was no reasonable suspicion here because, unlike Fernandez-Castillo, the ranger did not corroborate the Vallones' story before approaching him. Robson relies on language in the decision in which the Ninth Circuit specifically declined to hold that the MDOT report, standing alone, created reasonable suspicion to conduct the stop absent the officer's corroborating observations. "We do not hold that the MDOT report, *standing alone*, provided . . . reasonable suspicion to stop the car absent . . . [officer's] corroborating observations. That question is not before us." Id. at 1119-20. Rather, the court examined the totality of the circumstances and found that the report of erratic driving coupled with the officer's independent observations created reasonable suspicion the driver was operating a vehicle under the influence of drugs or alcohol. Fernandez-Castillo did not hold, as

///

1  Robson argues, that the Fourth Amendment requires more than an eye witness account of a possible
2  criminal act.
3        The Supreme Court and several circuit courts, including the Ninth Circuit, have held that a
4  detailed eye witness report of a crime needs no corroboration to establish probable cause because such
5  a report supplies its own indicia of reliability. See, e.g., Mass. v. Upton, 466 U.S. 727, 733-34 (1984);
6  U.S. v. Elliott, 893 F.2d 220, 223 (9th Cir. 1990) (amended on other grounds by 904 F.2d 25); U.S. v.
7  Pelham, 801 F.2d 875, 878 (6th Cir. 1986); U.S. v. Hodges, 705 F.2d 106, 108 (4th Cir. 1983); U.S. v.
8  Copeland, 538 F.2d 639, 642-43 (5th Cir. 1976).  In Elliott, the Ninth Circuit found that an informant's
9  detailed report regarding her roommate's drug-growing operation supported probable cause because
10 the report was detailed, showed an adequate basis of knowledge, and was not made by an anonymous
11 tipster.  893 F.2d at 223.
12       A traffic stop "is permissible under the Fourth Amendment if supported by reasonable
13 suspicion." Ornelas v. United States, 517 U.S. 690, 693 (1996).  Fernandez-Castillo did not hold that
14 an officer must independently corroborate a citizen's report of a traffic infraction before conducting an
15 investigatory detention.  In fact, the decision cited a series of Supreme Court decisions finding
16 reasonable suspicion based on third-party reports of suspected criminal activity where those reports
17 possessed sufficient indicia of reliability.  See, Florida v. J.L., 529 U.S. 266 (2000); Alabama v. White,
18 496 U.S. 325, 330 (1990); Adams v. Williams, 407 U.S. 143, 147 (1972).  In J.L., the Supreme Court
19 held that an anonymous tip, standing alone, lacked sufficient indicia of reliability to establish
20 reasonable suspicion for an investigatory detention, explaining that anonymous tips are often
21 unreliable.  There, the police received an anonymous call from an unknown location that a young black
22 male standing at a particular bus stop and wearing a plaid shirt, was carrying a gun.  Officers went to
23 the bus stop and saw three black males, one of whom, J.L., was wearing a plaid shirt.  The officers had
24 no reason to suspect any of the three were engaged in illegal conduct, did not see a firearm, or observe
25 any unusual movements, but frisked J.L. and seized a gun from his pocket.  Although the Supreme
26 Court found reasonable suspicion lacking, Justice Ginsburg's decision recognized that even an
27 anonymous tip, suitably corroborated, could provide sufficient indicia of reliability to establish
28 reasonable suspicion to make an investigatory stop, citing Alabama v. White, Id.

In White, the Supreme Court held that an anonymous tip containing predictive information that was partially corroborated by law enforcement contained sufficient indicia of reliability to support reasonable suspicion. In Adams, the Supreme Court held that an unverified tip from a known informant was sufficiently reliable to justify a *Terry* stop and frisk. Reviewing these three Supreme Court cases, the Fernandez-Castillo court recognized that in J.L. the Supreme Court emphasized that an unreliable tip, standing alone, does not give an officer reasonable suspicion to effectuate a *Terry* stop, but found the case before it was distinguishable from J.L. because the information relied upon came from a known source, the report was made contemporaneously with the informant's observation, the detaining officer discovered the car described in the dispatch within minutes of the MDOT report, and the detaining officer corroborated the report of erratic driving through his own independent observations. 324 F.3d at 1117, n. 3.

The Fernandez-Castillo court concluded that even if it assumed, *arguendo*, that the MDOT report of erratic driving was "anonymous in nature," the report "must be considered and given due weight in the reasonable suspicion calculus because the report possessed several indicia of reliability." Id. at 1119. The Ninth Circuit did not, however, hold that the MDOT report, standing alone, was insufficient to create reasonable suspicion to conduct the stop, as Robson seems to suggest. Moreover, in a more recent decision, U.S. v. Miranda-Guerena, the Ninth Circuit held "The Fourth Amendment does not require the traffic violation to occur in the officer's presence . . . the Fourth Amendment allows reasonable suspicion to be based on reports from third parties, including other law enforcement agencies." 445 F.3d 1233, 1237 (9th Cir. 2006) (citation omitted).

Here, Mr. Vallone identified himself to Ranger Raynolds and provided a detailed description of Robson's very recent erratic driving which he and his wife had observed. Mr. Vallone described the color, make, model, and license plates of Robson's parked vehicle, and pointed it out to Ranger Raynolds in the parking lot. Mr. Vallone described how he and his wife had observed Robson's truck swerve into their lane of traffic, nearly colliding with them, and reported that he followed Robson a short distance until observing him park his vehicle. The Vallones remained in the parking lot long enough to fill out a joint report with their names and contact information, and testified under oath at the evidentiary hearing corroborating their oral and written reports to Raynolds. The court finds that

the Vallones' detailed report of Robson's very recent erratic driving provided sufficient indicia of reliability to create reasonable suspicion Robson had committed a traffic infraction.

### 2. Raynolds' Observations

Assuming *arguendo* that the Vallones' report of Robson's erratic driving was insufficient, standing alone, to create reasonable suspicion, the court finds Ranger Raynolds developed reasonable suspicion within the first fifteen seconds of making contact with Robson. As Raynolds approached Robson's vehicle, he saw two beer cans in the bed of Robson's truck, and an oleander branch hanging off the driver's side of Robson's vehicle. Within the first fifteen seconds of speaking with Robson, Raynolds detected an odor of alcohol, and noticed Robson's eyes were bloodshot, his speech was slurred, and his clothes were soiled. Thus, the court finds the Vallones' report coupled with Raynolds' observations in the initial fifteen seconds of making contact with Robson, created reasonable suspicion to conduct an investigatory detention for driving under the influence.

### CONCLUSION

Ranger Raynolds did not seize Robson without reasonable suspicion when he approached Robson who was sitting in a parked truck in a public place after receiving the Vallones' report. Under the totality of the circumstances, the Vallones' detailed report to Ranger Raynolds of their recent observations of Robson's erratic driving possessed sufficient indicia of reliability to create reasonable suspicion Robson had just committed a traffic infraction. Additionally, within fifteen seconds of approaching Robson in his parked truck, Raynolds developed reasonable suspicion that Robson had been driving while under the influence of alcohol.

For all of the foregoing reasons,

**IT IS ORDERED** that Defendant Van Robson's Motion to Suppress (#8) is DENIED.

Dated this 30th day of October, 2007.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE